**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**KATHRYN M. ZAMBONI-CUTTER, and**
**MARK B. ZAMBONI-CUTTER**, individuals

Plaintiffs.

v.

**BANKERS STANDARD INSURANCE COMPANY**, a Pennsylvania corporation,

Defendant.

---

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiffs, Kathryn M. Zamboni-Cutter and Mark B. Zamboni-Cutter (collectively "Plaintiffs"), by and through undersigned counsel, for their Complaint against the above-named Defendant Bankers Standard Insurance Company ("Defendant"), and states as follows:

## I. NATURE OF THE ACTION

1. Plaintiffs bring this action seeking damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §§10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

## II. PARTIES

2. Kathryn M. Zamboni-Cutter and Mark B. Zamboni-Cutter ("Zamboni-Cutter" or "Plaintiffs") are residents of Colorado and reside at 361 San Marino Court, Colorado

Springs, CO 80906.

3. Bankers Standard Insurance Company ("Bankers" or "Defendant") is an insurance company incorporated in the state of Pennsylvania, and it has its principal place of business located in Philadelphia, PA.

## III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5. Plaintiffs sought and obtained an insurance policy, Policy No. 268132260 (the "Policy"), from Defendant for property located at 361 San Marino Court, Colorado Springs, CO 80906 (the "Property"). *See Exhibit 1, The Policy.*
6. Plaintiffs' custom-built home was completed on or about March 2011.
7. On or about August 6, 2018, a storm producing high winds and hail damaged the exterior of the Property and caused interior damage.
8. Upon information and belief, on or about August 2018, Plaintiffs timely filed their claim with the Defendant for this loss and Defendant issued Plaintiffs the claim number 771-82385 (the "Claim").
9. The Defendant assigned Robert Thompkins as the original adjuster to handle the

Plaintiffs' claim.

10. On or about August 22, 2018, Mr. Thompkins retained Matt Vogel of Grecco Construction Consultants to estimate the total damage of the Plaintiffs' Property. Mr. Vogel's estimate totaled $240,039.12. *See Exhibit 2, Grecco Estimate.*

11. Mr. Vogel's estimate was grossly inadequate to fully and fairly indemnify Plaintiffs' loss.

12. On or about February 16, 2019, the Plaintiffs retained Mark Rothbauer ("Mr. Rothbauer") and Matt Latham ("Mr. Latham") from Compass Adjusting LLC ("Compass") as their public adjusters to assist them with the Claim.

13. On or about February 28, 2019, Mr. Rothbauer conducted the initial inspection of the Plaintiffs' property and a preliminary estimate was issued to Defendant.

14. On or about April 30, 2019, Mr. Rothbauer emailed Mr. Thompkins requesting Bankers establishes a reserve at approximately $1,750,000.00 to $2,100,000.00 based upon the information available at that time. *See Exhibit 3, Email dated April 30, 2019 from Rothbauer to Thompkins.*

15. On May 8, 2019, Bankers transferred the claim to Tommy V. Le.

16. On May 15, 2019, an initial joint inspection was held with Mr. Le from Bankers, Shawn Aycock of JS Held, Shane Loschen and Lyle Carpenter of Total Roofing, Randy Shepherd of Love Your Stucco and Mr. Rothbauer.

17. During the May 15, 2019 joint inspection Mr. Le made numerous verbal commitments and agreements witnessed by all participants of the inspection agreeing with the scope of work as proposed by Mr. Rothbauer.

18. On May 16, 2019, Mr. Rothbauer issued an estimate following the joint inspection to the

Defendant. This initial estimate totaled $1,610,978.00, significantly more than what Bankers estimated the damage to cost. *See Exhibit 4, Compass Estimate dated May 16, 2019.*

19. Additional inspections were conducted by Bankers through the summer of 2019 with very little movement regarding the estimated costs of damages.
20. On June 20, 2019, Plaintiffs' estimated total increased again as bids were sought to confirm the costs of the repairs. Plaintiffs' total replacement cost increased to $1,669,265.72. *See Exhibit 5, Compass Estimate dated June 20, 2019.*
21. On July 1, 2019, Plaintiffs received a roof only estimate from Bankers that again was significantly lower than what was needed to replace the roof. *See Exhibit 6, JS Held Estimate.*
22. On July 15, 2019, Plaintiffs' public adjusters provided a roofing estimate so Bankers could compare line items and understand why the JS Held estimate was deficient. *See Exhibit 7, Compass Estimate 7-15-19.*
23. On August 30, 2019, a second joint inspection between the parties occurred at the Property. The following individuals were present at that meeting: Mr. Le of Bankers, Joseph Del Guidice of JS Held, Jaren Van Zante from Window and Door Source, representatives from Krueger Brothers, Shane Loschen and Lyle Carpenter of Total Roofing, Randy Shepherd of Love your Stucco, and Mr. Rothbauer of Compass.
24. At this meeting it was expressed that the work outlined by Bankers and JS Held would not restore the property to its pre-loss condition.
25. Over the next month numerous attempts were made by the Plaintiffs' public adjusters to identify why Bankers would not pay the claim in full.

26. On October 4, 2019, Total Roofing's contract with the Plaintiffs was provided to Bankers for a total of $1,677,072.21. *See Exhibit 8, Total Roofing Contract.*
27. In response to the Plaintiffs' contract with Total Roofing, Bankers demanded supporting documentation that formed the basis for this estimate.
28. On October 8, 2019, the supporting documentation was provided by Compass Adjusting to Mr. Le of Bankers.
29. On November 21, 2019, Bankers notified Plaintiffs that additional estimates were needed for the damaged windows and stucco on the Property, despite the Plaintiffs production of documentation to support their replacement cost value.
30. On December 5, 2019, Bankers issued an estimate from JS Held that again attempted to undervalue the damages by pricing repairs that would have devalued the property. Bankers' final estimate only totaled $892,424.06. *See Exhibit 9, JS Held Estimate from 12-3-19.*
31. Over the next three months, Plaintiffs' public adjusters repeatedly pointed out the discrepancies in the estimate provided by Bankers. Specifically noting issues with the roofing bid, stucco bid, and window bid which, if conducted as Bankers estimate reflects, would devalue the home, and likely cause further damage over the life of the home.
32. On March 3, 2020, Plaintiffs received notice from their public adjusters that Mr. Le of Bankers was closing the claim down and refusing to adjust the claim. *See Exhibit 10, Email from Tommy V. Le of Bankers*.
33. Throughout the claim process, Bankers sent contractors to the Property with the purpose of obtaining bids or quotes for the work to be completed. Not all of the contractor bids were provided to Plaintiffs, and bids were withdrawn.

34. Bankers intentionally drug out the claim process to the detriment of the Plaintiffs and this was done to exert undue pressure to settle the claim for less than the value of the needed repair costs.

35. Bankers was provided extensive supporting documentation to justify costs illustrated in the Total Roof Contract and yet they have refused to indemnify the Plaintiffs.

## V. FIRST CLAIM FOR RELIEF

(*Breach of Contract*)

36. Plaintiffs reincorporate the allegations contained in the paragraphs above as if fully set forth herein.

37. The Policy was a contract of insurance.

38. By its actions, as described above, Defendant breached the contract of insurance by failing to pay for all covered losses caused by the storm.

39. As a direct and proximate result of said breach, the Plaintiffs are entitled to compensatory and consequential damages in an amount to be determined at trial.

40. Plaintiffs complied with all terms and conditions of the policy.

## VI. SECOND CLAIM FOR RELIEF

*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

41. Plaintiffs reincorporate the allegations contained in the paragraphs above as if fully set forth herein.

42. Defendant has at all times attempted to shortchange the Plaintiffs. For example, Defendant hired Construction Consultants. Construction Consultants were clearly biased and retained for the illegitimate purpose of producing low estimates. Bankers originally estimated the

loss at only $240,039.12. This amount is only about 25% of what the Defendant eventually paid. Thereafter, Defendant refused to share bids from contractors with Plaintiffs and continued to offer low amounts for the claim. For example, while Defendant ultimately paid $892,424.06, this amount is still only about half of the Plaintiffs' contractor's price.

43. Defendant's denial of open and obvious damage, unfounded denial to pay the contractor's price, and producing artificially low estimates has materially harmed the Plaintiffs by unreasonably delaying the claim and causing Plaintiffs to incur additional expenses and fees.

44. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

45. Plaintiffs are first-party claimants under C.R.S. §10-3-1115.

46. Defendant has partially denied the Plaintiffs' claim without a reasonable basis within the meaning of C.R.S. §10-3-1115 because it refuses to pay the remaining amount owed for the contractor to complete the work.

47. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed or denied by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

48. Because Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiffs brings this claim to recover their reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court enter judgment in their favor and against Defendant on its Claims for Relief as follows:

a. Consequential damages for Defendant's breach of contract;

b. All unpaid covered benefits owed under the Policy;

c. Two times the amount of all covered benefits under the Policy;

d. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

e. Pre- and post-judgment interest; and

f. For such other and further relief as this Court may deem just.

Respectfully submitted this April 24, 2020,

/s/ David Miller

David Miller
SAEED & LITTLE, LLP
133 West Market St., #189
Indianapolis, IN 46204

**JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues.

/s/ David Miller
David Miller