Gmail by Google

**Mark Rothbauer <mark@compassadjusting.net>**

## RE: [EXTERNAL] Re: Mark and Kathryn Zamboni-Cutter Claim 77182385

3 messages

---

**Le, Tommy V** <tvle@chubb.com> Tue, Mar 3, 2020 at 10:01 AM
To: Mark Rothbauer <mark@compassadjusting.net>, Matt Latham <matt@compassadjusting.net>
Cc: Examinermail <Examinermail1@chubbgroup.onmicrosoft.com>, Joseph Del Guidice <jdelguidice@jsheld.com>

Mar,

Hope all is well. I wanted to follow-up to our email below.

Do you have additional information for our review? Our records show that we have paid $899,235.75 with a recoverable depreciation of $16,395.37 for the roof replacement.

We will be closing our file within 15 business days or March 24 unless you have additional information for our review.

Thank you

Respectfully,



CHUBB

**Tommy V Le**
General Adjuster, Chubb North American Claims

2155 W. Pinnacle Peak Road, Phoenix, AZ 85027, USA
O (720) 895-5071 M (303) 513-9674 F (877) 817-5699
E tvle@chubb.com

*Welcome to Chubb Claims. Life is about to get easier.*

**I strive to take care of all issues and questions directly with you. If you need to speak with my manager, Matthew Witcher, you can reach him at (818) 437-8715 or via email at matthew.witcher@chubb.com.**

Chubb. Insured.™

**From:** Le, Tommy V
**Sent:** Friday, January 24, 2020 2:55 PM
**To:** Mark Rothbauer <mark@compassadjusting.net>; Matt Latham <matt@compassadjusting.net>
**Cc:** Examinermail <Examinermail1@chubbgroup.onmicrosoft.com>; Joseph Del Guidice <jdelguidice@jsheld.com>
**Subject:** RE: [EXTERNAL] Re: Mark and Kathryn Zamboni-Cutter Claim 77182385

Mark,

Below are our responses to your questions along with attachment from Krueger Brothers. Thank you

Reviewing the Pella quote, I do not see any reference to labor for removal of existing windows and installation. Can you provide me with the reference where this is indicated within that proposal?

Labor for window removal is included with the Pella bid for the windows.

In the last few emails from you, representations have been made that Chubb is missing information regarding square footage of the stucco. Previously you stated, "it appears that there are some duplication with the two estimates." What specifically, within the LYS estimates, led you to this assumption/ belief? I have reviewed and read both estimates thoroughly and do not recognize anything that would make me believe there are duplications.

Per the marked estimates I have emailed it appears that the window waterproofing and stucco repair for the windows is listed in both estimates. The scaffolding is also listed in both estimates. Is the scaffold being shared by both trades? What is the bid for the scaffolding at the residence? What is the window material total for installation? What interior repairs are included as listed in the LYS estimate?

In order for the insured to consider that stucco bid from KBC, which your last payment is based upon, the following information will need to be provided: Please see attached from Krueger.

Scope of work

a. Plenty of cover up "considered" for landscaping and roof areas. What does “considered” mean? Does that mean it is included within their proposal? If it is included within their proposal, what is the breakdown of that statement? How many SF? For what duration? Landscaping protection is a typical included bid item for this scope of work. Please see attached from Krueger.

b. Dumpster and porta-potty considered. What does “considered” mean? Does that mean it is included within their proposal? If it is included within their proposal, what is the breakdown of that statement? What size dumpster? How many dumpsters? Where will it be located? How many months on the porta-potty? What company provided the quoted price for the porta-potty? How often do they intend to have it serviced? Krueger Brothers has included all necessary general conditions to complete the scope of work.

---

Also, we have not receive a response to the attached email sent on 12/19/2019. Can you please provide information as requested? Like you, we would like to conclude this loss for the homeowner.

Thank you

Respectfully,



CHUBB

**Tommy V Le**
General Adjuster, Chubb North American Claims

2155 W. Pinnacle Peak Road, Phoenix, AZ 85027, USA
O (720) 895-5071 M (303) 513-9674 F (877) 817-5699
E tvle@chubb.com

*Welcome to Chubb Claims. Life is about to get easier.*

**I strive to take care of all issues and questions directly with you. If you need to speak with my manager, Matthew Witcher, you can reach him at (818) 437-8715 or via email at matthew.witcher@chubb.com.**

Chubb. Insured.℠

**From:** Mark Rothbauer [mailto:mark@compassadjusting.net]
**Sent:** Monday, January 13, 2020 1:26 PM
**To:** Le, Tommy V <tvle@chubb.com>; Matt Latham <matt@compassadjusting.net>
**Cc:** Examinermail <Examinermail1@chubbgroup.onmicrosoft.com>
**Subject:** [EXTERNAL] Re: Mark and Kathryn Zamboni-Cutter Claim 77182385

Tommy,

We have reviewed the attachments we have some questions....

Reviewing the Pella quote, I do not see any reference to labor for removal of existing windows and installation. Can you provide me with the reference where this is indicated within that proposal?

In the last few emails from you, representations have been made that Chubb is missing information regarding square footage of the stucco. Previously you stated, "it appears that there are some duplication with the two estimates." What specifically, within the LYS estimates, led you to this assumption/ belief? I have reviewed and read both estimates thoroughly and do not recognize anything that would make me believe there are duplications.

In order for the insured to consider that stucco bid from KBC, which your last payment is based upon, the following information will need to be provided:

Scope of work

a. Plenty of cover up "considered" for landscaping and roof areas. What does “considered” mean? Does that mean it is included within their proposal? If it is included within their proposal, what is the breakdown of that statement? How many SF? For what duration?

b. Dumpster and porta-potty considered. What does “considered” mean? Does that mean it is included within their proposal? If it is included within their proposal, what is the breakdown of that statement? What size dumpster? How many dumpsters? Where will it be located? How many months on the porta-potty? What company provided the quoted price for the porta-potty? How often do they intend to have it serviced?

Scaffolding

a. What is the line item total for this reference? It is not specified.

b. What period of time are they expecting to utilize the scaffolding? It is not specified.

c. How many phases are they proposing? It is not specified.

d. Are they calculating the scaffolding to be cross-utilized with the window installation? If not, is the scaffolding costs for the window R&R included within the Pella Quote? It is not specified.

e. Where did they receive their scaffolding quote from? Please provide us with the scaffolding quote utilized. It is not specified.

f. Please provide us with their safety manual along with the specific OSHA standards they will be adhering to in order to address their statement "This is a difficult scaffold set." It is not specified.

Stucco

a. How many square feet of stucco are they repairing/ replacing? It is not specified.

b. What specifically are they intending to do in regard to the demo? Their description is vague. How many openings are they estimating? Quantity of openings is not specified.

c. Patching of the moisture barrier. What product(s) are they intending to utilize to accomplish this? What gauge lath are they intending to utilize? What product are they intending to use for the base coat? Their proposal does not contain these specifics.

d. What product(s) are they intending to utilize for their referenced "polymer modified stucco base?" Their proposal does not contain specifications.

e. Do they intend to utilize a primer coat? It is not specified within their proposal.

f. What product(s) and procedure do they intend to utilize to repair and stabilize the fractures within the existing stucco surface? It is not specified.

g. Where/ how do they intend to stage their equipment and materials? It is not specified.

Exclusions

#3. What do they intend to utilize for their energy needs? Do they intend to not utilize power equipment?

#5. What aspect of demolition is excluded? Under scope of work they include "stucco demo at replacement windows and doors..." This exclusion contradicts their statement of work. Please clarify.

#8. How do they intend to create the transition between the windows and doors without the utilization of insulation backer rod?

#13. Does this exclude the akrotique option 2 referenced earlier within their proposal? This exclusion contradicts statements within their proposal.

#14. What specifically does this exclusion encompass?

#16. Does this exclusion apply to headwall, sidewall, header and sill pan flashings integrated within the stucco system?

#20. Are they aware that the existing stucco system is numerous colors?

#21. Does this exclusion apply to the garden wall and columns?

#22. Does this exclusion apply to the cultured stone veneer?

#27. What is their intended or proposed methodology of sealing around the windows and doors?

#30. How do they intend to gain access to perform the stucco repairs at recessed areas?

#32. What "water" are they specifically referencing is excluded?

#36. What about this one? Are they installing the roof at the same time?

Respectfully,

Mark Rothbauer

Compass Adjusting

719.684.3605

CONFIDENTIALITY / PRIVILEGE NOTICE: This transmission and any attachments are intended solely for the addressee. This transmission is covered by the Electronic Communications Privacy Act, 18 U.S.C §§ 2510-2521. The information contained in this transmission is confidential in nature and protected from further use or disclosure under U.S. Pub. L. 106-102, 113 U.S. Stat. 1338 (1999), and may be subject to attorney-client or other legal privilege. Your use or disclosure of this information for any purpose other than that intended by its transmittal is strictly prohibited, and may subject you to fines and/or penalties under federal and state law. If you are not the intended recipient of this transmission, please DESTROY ALL COPIES RECEIVED and confirm destruction to the sender via return transmittal.

On Thu, Dec 5, 2019 at 11:23 AM Le, Tommy V <tvle@chubb.com> wrote:

> Mark,
>
> Please see attached documentation regarding the hail damage to Mr. and Mrs. Cutter's home. We have requested an amount of $603,795.21 for the windows/stucco repairs based on the attached estimate. The payment will include Mr. & Mrs. Insured, compass bank and compass adjusting. Let me know if you have any questions.
>
> Included in this email are the following:

1. Estimate from JS Held for $892,424.06 for windows/stucco and includes agreed cost for roof.
2. Supporting estimate for Stucco.
3. Supporting estimate for windows.
4. Statement of loss.

Respectfully,



CHUBB

**Tommy V Le**
General Adjuster, Chubb North American Claims

2155 W. Pinnacle Peak Road, Phoenix, AZ 85027, USA
O (720) 895-5071 M (303) 513-9674 F (877) 817-5699
E tvle@chubb.com

*Welcome to Chubb Claims. Life is about to get easier.*

**I strive to take care of all issues and questions directly with you. If you need to speak with my manager, Matthew Witcher, you can reach him at (818) 437-8715 or via email at matthew.witcher@chubb.com.**

Chubb. Insured.℠

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

---

**Mark Rothbauer** <mark@compassadjusting.net> Tue, Mar 3, 2020 at 10:59 AM
To: David Miller <david@sllawfirm.com>, Matt Latham <matt@compassadjusting.net>

See thread.... how do you want or should I respond?
[Quoted text hidden]
[Quoted text hidden]

**4 attachments**



**image001.jpg**
2K



**image001.jpg**
2K



**image001.jpg**
2K



**image001.jpg**
2K

---

**Mark Rothbauer** <mark@compassadjusting.net> Thu, Mar 5, 2020 at 12:13 PM
To: "Le, Tommy V" <tvle@chubb.com>
Cc: Matt Latham <matt@compassadjusting.net>, Examinermail <Examinermail1@chubbgroup.onmicrosoft.com>
Bcc: David Miller <david@sllawfirm.com>

Tommy,

First, I have intentionally excluded JS Held from this communication. Your consultant(s) do not carry a level of authority or contractual obligation with the Insured permitting them (in my opinion) to be privy to discussions regarding your fiduciary duty or policy provisions which govern our relationship. It is problematic to permit consultants to make opines regarding applicability of coverage which is exactly why I believe we have such a gross difference in the settlement amounts associated with this loss.

According to my current math of the loss, we have a disputed delta difference in the settlement amount of $761,441.09. In previous communications, the delta difference was approximately $588k. This difference hardly reflects reaching an amicable settlement or even a compromised settlement. The client has selected their contractor and has entered into a binding relationship with that contractor. We communicated early on the damages claimed and the amount of the settlement will be presented based upon the proposals and estimates provided by the contractor(s) for the Insured. We even conducted numerous inspections with you, the contractors and your consultants to resolve differences in scope and pricing. After all of the joint inspections, not once has the scope of repairs been contested or rejected by you. Your consultants have had a different opinion on what their role is or their responsibility to you is. We are not confident that the bids that were provided by your consultants reflect LKQ or consider the luxury nature of the property for which the repairs are being performed on. The information that you've been in possession of for almost a year alleviates the burden of proof on behalf of the Insured. We have encouraged you to adjust the claim appropriately against the policy coverage and any applicable exclusions accordingly. To date, you have not been able to provide us with a direct policy reference stating that the Insured is obligated or bound to utilize the lowest priced contractor or value provided by your consultants. Nor have you provided a policy reference excluding you from indemnifying the Insured for the incurred costs that they are contractually bound to honor.

It is my understanding that we do not have a dispute of damages relating to any aspect of the claimed loss.

Furthermore, Xactimate, easily the recognized authority in the industry as it relates to estimating, makes a statement regarding differences between different contracting businesses. Xactimate surveyed sixteen different roofing companies within the Dallas, Texas area. Quoting an identical product installation, the companies quoted a price range of more than 70%. They expand to state *"The average cost range in cities throughout North America is over **50 percent**, and Xactware **commonly sees ranges of 100 percent** or more..."* Clearly, which you may not be aware of, there is NO way to compare the information and bids provided by your consultants as apples to apples to any other contractor that HAS been hired by the Insured. Each respective contractor is an entity on their own with their own organizational structure, overhead, marketing costs, warranty environment, etc, etc, etc... It is safe to say the information that we provided you gleaned from the Insured's contractors meets the requirements of similar or comparative quantities, LKQ of damaged components/ systems, scope of repairs, common standards and restores the property to pre-loss. Outside of that, price to perform the repairs is not a condition to be met for the application of coverage nor is it a factor of consideration for you to make a determination of appropriate coverage. Are the claimed damages, which you have been notified of, covered or not under the policy that was in effect at the time of the claimed date of loss for the covered peril claimed? Is the covered peril claimed the determined peril of causation? Are the claimed and stated repairs necessary to restore the property to a condition reflective of pre-loss? These are the only three questions that need to be answered in any loss. Are you or Chubb now claiming that the previous agreements regarding scope of repairs is being contested? I wasn't aware of or under the impression that there was any disagreement in the scope of repairs.

I don't know what else to tell you Tommy. What your consultants say or don't say doesn't have any application or credibility of performance in relation to the promises sold to the Insured. In my opinion, it's very simple to understand. Your consultants are paid to provide opines that they are not nor will they ever be exposed to perform nor are they exposed to any resulting demise of their businesses or earnings. It is similar to either one of us gaining access into an operating room of a cardiac surgeon. We look over the

surgeon's shoulder, take a minute to observe what he is doing, point to a random artery or flesh and say "Cut there." and we walk away to the next operating room to do the same. Sounds ridiculous doesn't it? That is exactly what your consultants are doing on this project. They're a third party to the relationships surrounding the contract of insurance purchased by the Insured's premiums. In the prior scenario, if the surgeon followed our opine and the patient died or suffered irreversible bodily harm, who would be liable for that death? Not you or me, the surgeon would be because he holds the responsibility and liability as the performing party. Your consultants don't have to be right... they don't even have to be close.

Without you considering the information that has been provided to you by us and the contractors for the Insured as equal in interest to that of your employer, this claim will not close.

Respectfully,

Mark Rothbauer
Compass Adjusting
719.684.3605

CONFIDENTIALITY / PRIVILEGE NOTICE: This transmission and any attachments are intended solely for the addressee. This transmission is covered by the Electronic Communications Privacy Act, 18 U.S.C §§ 2510-2521. The information contained in this transmission is confidential in nature and protected from further use or disclosure under U.S. Pub. L. 106-102, 113 U.S. Stat. 1338 (1999), and may be subject to attorney-client or other legal privilege. Your use or disclosure of this information for any purpose other than that intended by its transmittal is strictly prohibited, and may subject you to fines and/or penalties under federal and state law. If you are not the intended recipient of this transmission, please DESTROY ALL COPIES RECEIVED and confirm destruction to the sender via return transmittal.

[Quoted text hidden]